# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| NAKEHBA HOOPER, <br><br> Plaintiff, <br><br> v. <br><br> DAVID LAIN, Sheriff of Porter County; JOHN WHIDUP, Warden of Porter County Jail; MEDICAL CORPORATION, assigned the duties of providing medical services at the Porter County Jail; UNNAMED PORTER COUNTY CORRECTIONS OFFICERS; JANE and JOHN DOE; and PORTER COUNTY COMMISSIONERS: JOHN EVANS, NANCY ADAMS, and LAURA BLANEY <br><br> Defendants. | Case No. 2:14-CV-358 JVB |

**OPINION & ORDER**

Plaintiff, Nakehba Hooper, brought this lawsuit as a result of a miscarriage she suffered while an inmate at Porter County Jail. Plaintiff alleges that her miscarriage was due to Defendants' misconduct, negligence, and mistreatment. Plaintiff asserts that Defendants violated her rights under the Eighth and Fourteenth Amendments to the Constitution. Plaintiff also raised supplemental state law claims for professional negligence, wrongful death, and negligent infliction of emotional distress. Defendants have filed a Motion to Dismiss (DE 14) all of Plaintiff's claims. For the reasons outlined below, the Court grants in part and denies in part Defendants' motion.

## A. Background

Plaintiff was incarcerated at the Porter County Jail from October 6, 2012, until November 16, 2012. (DE 1, Compl. at 2.) Plaintiff was five months pregnant on her first day of incarceration. (*Id.*) Prior to her incarceration, Plaintiff was prescribed prenatal medications because she lacked an RH antigen in her blood. (*Id.*) Without proper medication this condition can cause serious illness, brain damage, or the death of a child in utero. (*Id.* at 3.) During inprocessing, Jail staff confirmed that Plaintiff was pregnant. (*Id.*)

Plaintiff maintains that Defendants failed to provide her the necessary medical care, which eventually led to her miscarriage. Plaintiff alleges that Jail staff replaced her prescription medication with alternative medication and that she was not examined by a gynecologist or obstetrician while incarcerated. Plaintiff also contends that Defendants failed to provide basic necessities to accommodate her pregnancy, such as proper bedding, a sleeping mat to prevent back pain, a properly fitting bra, and the requisite amount of toilet paper. (*Id.*)

On October 21, 2012, at around 4:00 p.m., Plaintiff began experiencing pregnancy complications and pressed the button in her cell for assistance, but did not receive a response. (*Id.*) Plaintiff contends that she repeatedly pushed the button for assistance, but did not receive a response until 4:30 p.m. At this time, a nurse appeared, performed a cursory examination, and informed Plaintiff that she would call a doctor. (*Id.* at 4.) The nurse then left Plaintiff's cell. (*Id.*) Plaintiff asserts that Jail staff did not assist her again until other inmates noticed that she was in distress and requested medical aid for her at about 5:00 p.m. (*Id.*) At 5:50 p.m., Plaintiff was shackled, handcuffed, and placed in a transport vehicle to take her to the hospital. (*Id.*) Later that evening, the emergency room attending physician told Plaintiff that her baby would not survive and Plaintiff subsequently suffered a miscarriage. (*Id.*) Plaintiff was discharged from the hospital

two days later and now maintains that Defendants' conduct "caused . . . the loss of her fetus and the accompanying physical, emotional, and mental anguish associated with such loss." (*Id.*)

B. **Motion to Dismiss Standard**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim is to test the sufficiency of the pleadings, not to decide the merits of the case. *See Gibson v. Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Rule 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." However, "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)).[1] As the Supreme Court has stated, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A complaint is facially plausible if a court can reasonably infer from factual content in the pleading that the defendant is liable for the alleged wrongdoing. *Id.* (citing *Twombly*, 550 U.S. at 556). The Seventh Circuit has synthesized the standard into three requirements. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). "First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept

---

[1] In Twombly, the Supreme Court "retooled federal pleading standards, retiring the oft-quoted [*Conley v. Gibson*, 355 U.S. 42, 47 (1957)] formulation that a pleading 'should not be dismissed for failure to state a claim unless it appears beyond doubt that the [pleader] can prove no set of facts in support of his claim which would entitle him to relief.'" *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.*

C. Federal Claims

1. *Section 1983 Claims*

Plaintiff brought her § 1983 claims against Defendants Lain and Whidup in their official and individual capacity. In the alternative, Plaintiff argues that, if Defendants Lain and Whidup are not liable in their individual capacity, then five unnamed Jail staff members who dealt with her are liable in their individual capacities.[2] Defendants maintain that Lain and Whidup cannot be liable in their individual capacities because they had no contact with Plaintiff during her incarceration. These two Defendants also argue that it is redundant to have them both named in their official capacity since they are each members of the same municipal body. Defendants' are correct in both instances. Accordingly, the Court grants Defendants' Motion to Dismiss in part, as it addresses Plaintiff's individual capacity § 1983 claims against Sherriff Lain and Warden Whidup and the official capacity claim against Warden Whidup.

---

[2] At this juncture, the Court is unable to fully address the § 1983 personal capacity claims against these five unnamed officers. Nevertheless, the Seventh Circuit Court of Appeals encourages district courts to allow Plaintiffs to properly identify these individual Defendants during discovery. *See Smith-Bey v. Hospital Adm'r*, 841 F.2d 751, 759, 1988 U.S. App. LEXIS 3499, 19 (7th Cir. 1988) ("The mere inability to state the individual defendants by name, however, does not warrant dismissal of a claim if the allegations in the complaint allow for the specific persons to be subsequently identified with reasonable certainty."); *Wellman v. Faulkner*, 715 F.2d 269, 275 (7th Cir. 1983) ("[s]everal of our cases have held that, under some circumstances, the responsibility of senior prison officials can be assumed at the pleading stage, pending discovery of those who were directly responsible for whatever deprivation may have occurred."); *Chavis v. Rowe*, 643 F.2d 1281, 1289 n.9 (7th Cir. 1981) ("Chavis' failure to name a particular defendant in connection with his Eighth Amendment allegation is no bar to this claim.").

Policymakers within a municipality can be sued in their official capacity for adopting unconstitutional policies or allowing unconstitutional practices to routinely occur. This principle is referred to as *Monell* liability. *See, e.g., Valentino v. Vill. of S. Chi. Heights*, 575 F.3d 664, 674–75 (7th Cir. 2009) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). In an official capacity suit, the plaintiff simply alleges that the defendant was "party to the execution or implementation of official policy or conduct." *Hill v. Shelander*, 924 F.2d 1370, 1372 (7th Cir. 1991). However, a municipality cannot be held liable under Section 1983 on a theory of respondeat superior; indeed, a municipality can only be held liable for "constitutional violations caused by its official policies, including unwritten customs." *Rodgers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194, 201–202 (7th Cir. 1985) (citing *Monell*, 436 U.S. at 690–91).

On the other hand, to recover against a particular state actor in their individual capacity, a plaintiff must show that the named defendant was personally involved in the alleged constitutional violations. *See Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 614–15 (7th Cir. 2002). Under § 1983, a plaintiff cannot rely on a theory of respondeat superior to hold a supervisor liable; instead, a supervisor "must have had some personal involvement in the constitutional deprivation, essentially directing or consenting to the challenged conduct." *Id*. In other words, an individual capacity suit "focuses on the constitutional torts of an individual." *Shelander*, 924 F.2d at 1372. Therefore, to establish individual liability in a § 1983 action, Plaintiff must "show that the official, acting under color of state law, caused the deprivation of a federal right." *Graham*, 473 U.S. at 166.

Plaintiff claims that Defendants Lain and Whidup were responsible for the development and enforcement of unconstitutional policies pertaining to inmates' medical care and were responsible for supervising the execution of these policies by their subordinates. (DE 1, Compl. at 5.) Plaintiff further maintains that these "policies, customs, and practices" deprived her of constitutional rights granted in the Eighth and Fourteenth Amendment. (*Id.*) Thus, Plaintiff's claims are directed at unconstitutional policies or customs as opposed to the constitutional torts of these individual Defendants. As a result, Defendants' motion to dismiss Plaintiff's individual capacity claims under § 1983 against Defendants Lain and Whidup is granted.

As discussed above, the municipal entity that is potentially liable for these official capacity claims is the Porter County Sheriff's Department. Since the Warden and the Sheriff are both members of the Porter County Sheriff's Department, it is redundant for them to both be named Defendants. Accordingly, the § 1983 claim against Defendant Whidup, in his official capacity, is dismissed, which leaves Plaintiff's § 1983 official capacity claim against Sheriff Lain and § 1983 individual capacity claim against the five unnamed Jail staff members remaining.

### 2. *Porter County Commissioners*

Plaintiff alleges that the Porter County Commissioners are liable for the alleged constitutional deprivations and state law torts that occurred during her incarceration. Defendants counter that the Porter County Commissioners sole responsibility is to maintain its jail by keeping it open for use and in good repair, but they are not responsible for "administering the manner of an inmate's incarceration." *Weatherholt v. Spencer County*, 639 N.E.2d 354, 356 (Ind.

Ct. App. 1994). Defendants are correct. Consequently, all claims against the Porter County Commissioners must be dismissed.

Indiana Code § 36-2-2-24(a) explains that the county executive is responsible for establishing and maintaining a county jail. Ind. Code § 36-2-2-24(a) ("The executive shall establish and maintain a county courthouse, county jail . . .."). Indiana courts have interpreted this statute to create a duty "to keep the jail open for use and in good repair," but it does not create a duty of care to any individual inmate. *Weatherholt*, 639 N.E.2d at 356. Instead, the sheriff is charged with that duty and is responsible for operating the jail in a manner that ensures the safety and proper care of inmates. *See* Ind. Code § 36-2-13-5(a)(7) ("The sheriff shall . . . take care of the county jail and the prisoners there."). "Once the county establishes and then reasonably maintains the jail, it is not responsible for administering the manner of an inmate's incarceration." *Weatherholt*, 639 N.E.2d at 356.

In this case, Plaintiff's complaints do not address whether the Porter County Jail is open for use or in good repair. Instead, Plaintiff alleges that she was improperly cared for while she was incarcerated. Indiana Code § 36-2-13-5(a)(7) clearly outlines that the care of inmates is entrusted to the sheriff. Since, the Porter County Commissioners and the Porter County Sheriff's Department are separate municipal entities, the Porter County Commissioners are not a proper defendant in this action.

### D. State Law Claims

#### 1. *Professional Negligence Claims*

Plaintiff alleges that medical staff at the Jail were negligent, failed to provide her proper medical care, and failed to address her significant medical needs. Plaintiff maintains that

Defendants' negligence and mistreatment were particularly apparent on October 21, 2012, when she began to experience pregnancy complications. Defendants counter that Plaintiff's medical malpractice claim must be dismissed because Indiana law requires an individual to comply with Indiana Code § 34-18-8-4 before initiating a lawsuit against a health care provider.

Plaintiff concedes that she has not satisfied these prerequisites, but insists that her claim should not be dismissed. Plaintiff maintains that it is not clear whether the Medical Malpractice Act applies to Defendants and also argues that she has other negligence claims not covered by the statute; namely, failure to properly train the Jail staff and failure to adequately staff the jail. Defendants contend that this claim, even with the two non-medical malpractice negligence claims, should be dismissed because these other negligence claims are covered by discretionary function immunity. Defendants are correct regarding the medical malpractice and "failure to train" negligence claims, but incorrect as it pertains to the failure to adequately staff the jail negligence claim.

The Indiana Medical Malpractice Act demands that two prerequisites are satisfied before commencing a medical malpractice claim in court: "(1) the claimant's proposed complaint has been presented to a medical review panel . . . and (2) an opinion is given by the panel." Ind. Code § 34-18-8-4 (1)-(2). As a result, the Indiana Medical Malpractice Act "grants subject matter jurisdiction over medical malpractice actions first to the medical review panel, and then to the trial court." *H.D. v. BHC Meadows*, 884 N.E.2d 849, 853 (Ind. Ct. App. 2008). If there is no jurisdiction due to a failure to comply with Indiana Code § 34-18-8-4, then the Plaintiff has failed to state a claim upon which relief can be granted. *Tacket v. GMC, Delco Remy Div.*, 93 F.3d 332, 334 (7th Cir. 1996) (citing *Beach v. Owens-Corning Fiberglas Corp.*, 728 F.2d 407, 408 (7th Cir. 1984) (where the district court ruled that it was without jurisdiction to hear a case

because of the exclusive jurisdiction of an administrative board, the proper analysis is that the plaintiffs failed to state a claim upon which relief could be granted)). While the Indiana Legislature cannot modify the jurisdiction of a federal court, it is apparent in this case that Plaintiff has failed to comply with Indiana Medical Malpractice Act. As a result, under Indiana law, Plaintiff has failed to state a claim upon which relief may be granted and her claim for Professional Negligence, as it pertains to medical malpractice, must be dismissed.

Next, the Court must address Plaintiff's two negligence claims against Sheriff Lain, Warden Whidup, and unnamed Jail staff members. Indiana Code § 34-13-3-3(7) grants governmental employees acting in the scope of their employment immunity for "[t]he performance of a discretionary function." Ind. Code § 34-13-3-3(7); *see also Foster v. Pearcy*, 387 N.E.2d 446 (Ind. 1979). The issue of whether an act is discretionary is a question of law. *Peavler v. Bd. of Comm'rs of Monroe County*, 528 N.E.2d 40, 46 (Ind. 1988). In assessing whether "the function is the type intended to benefit from immunity," courts examine the nature of the conduct, the effect on governmental operations, and the capacity of the court to evaluate the propriety of the government's actions. *Id.* Notably, Indiana courts construe discretionary immunity narrowly and place the "burden of proving that the challenged act or omission was a policy decision made by consciously balancing risks and benefits" on the governmental defendant. *Id*.

In making this determination, Indiana courts utilize a "planning-operational test" to decide whether a function is discretionary. *City of Terre Haute v. Pairsh*, 883 N.E.2d 1203, 1206 (Ind. Ct. App. 2008) (citing *Peavler*, 528 N.E.2d at 46). This test "dictates that a governmental entity will not be held liable for negligence arising from decisions which are made at a planning level, as opposed to an operational level." *City of Crown Point v. Rutherford*, 640 N.E.2d 750,

752 (Ind. Ct. App. 1994). This entails that if a decision involves "the formulation of basic policy characterized by official judgment, discretion, weighing of alternatives, and public policy choices, then the decision is discretionary and" the government employee is immune from liability under Indiana Code § 34-13-3-3(7). *Voit v. Allen County*, 634 N.E.2d 767, 769–70 (Ind. Ct. App. 1994).

Plaintiff's negligence claim regarding the failure to train Jail staff is properly characterized as a planning decision that involved official judgment, discretion, weighing of alternatives, and public policy choices. Training of Jail staff necessarily involves decisions regarding which training tasks should be emphasized and what basic skills make members of the Jail staff sufficiently competent to perform their duties. *See, e.g., Lamb v. City of Bloomington*, 741 N.E.2d 436, 441 (Ind. Ct. App. 2001) (finding that a claim regarding the negligent instruction and/or training of the firefighters was properly dismissed as relating to a discretionary function). Plaintiff's failure to train claim is an attempt to make Defendants liable for "decisions about policy formation which involved assessment of competing priorities and a weighing of budgetary considerations and the allocation of scarce resources." *Rutherford*, 640 N.E.2d at 755. Accordingly, this claim against Defendants must be dismissed.

While staffing decisions at the jail involve the balancing of competing priorities and the allocation of scarce resources, it is not the sort of decision the Indiana Legislature intended to provide immunity for. Determining how many staff can be supported by their budget, how to properly schedule that staff, and how to deal with high-traffic versus low-traffic periods is best described as an operational decision. Staffing decisions made by the Porter County Sheriff's Department are "decisions regarding only the execution or implementation of already formulated

policy" and are "not discretionary under the statute [so] no immunity attaches. *Allen County*, 634 N.E.2d at 769–70.

### 2. *Wrongful Death*

The Indiana Child Wrongful Death statute, Ind. Code § 34-23-2-1, includes within its definition of "child" a fetus that has attained viability. Defendants maintain that Plaintiff's wrongful death claim must be dismissed because she has pled a set of facts that, on the basis of this definition, precludes recovery. Specifically, Defendant argues that Plaintiff was only twenty weeks pregnant at the time of her miscarriage, so the Court can determine, as a matter of law, that her fetus had not reached viability.

"[I]t is not the proper function of the legislature or the courts to place viability, which essentially is a medical concept, at a specific point in the gestation period." *Planned Parenthood v. Danforth*, 428 U.S. 52, 64 (1976). "[T]he time when viability is achieved may vary with each pregnancy, and the determination of whether a particular fetus is viable is, and must be, a matter for the judgment of the responsible attending physician." *Id.* There is simply not enough on the record, at this stage of the case, to determine the viability of Plaintiff's unborn child as a matter of law. Accordingly, the Court denies Defendants' motion to dismiss as it pertains to Plaintiff's wrongful death claim.

### 3. *Negligent Infliction of Emotional Distress*

Plaintiff's final state law claim alleges "Individual Defendant PCJ is liable to Plaintiff for the negligence of its employees . . . under the doctrine of respondeat superior." (DE 1, Compl. at 9.) This clouds the Court's analysis of this issue because there is no "Individual Defendant Porter

County Jail." Plaintiff declares that liability stemmed from Jail staff members intentionally or negligently failing in their duty to provide her with the requisite medical care. (*Id.*) Plaintiff, by arguing that Defendants either intentionally or negligently denied her medical care, seems to be arguing in the alternative. Consequently, Plaintiff is arguing that the unnamed officers were acting in the scope of their employment and the Porter County Sheriff's Department is liable under a theory of respondeat superior, or that they were acting outside of the scope of their employment and are personally liable.

In a suit against a public employee, if from the face of a complaint it can be determined that a plaintiff is alleging that a public employee was acting within the scope of his employment, then that defendant is entitled to immunity under state law. *Bushong v. Williamson*, 790 N.E.2d 467 (Ind. 2003). In *Bushong*, a school teacher was sued personally for assaulting a student. In granting the teacher immunity from suit, the Indiana Supreme Court stated that pursuant to Ind. Code § 34-13-3-5(b), "a plaintiff may not now sue a governmental employee *personally* if the complaint, on its face, alleges that the employee's acts leading to the claim occurred within the scope of employment." *Id.* at 471 (emphasis added). However, a lawsuit may be filed personally against a governmental employee whose actions are criminal, clearly outside the scope of employment, malicious, willful or wanton, or calculated to benefit the employee personally. Ind Code § 34-13-3-5(c)(1)-(5).

Nevertheless, governmental entities in Indiana are "bound, both directly and under a theory of respondeat superior, by the common law duty to use ordinary and reasonable care under the circumstances, except for such claims as failure to prevent crime, appointment of an incompetent official, or an incorrect judicial decision." *City of Hammond v. Cipich*, 788 N.E.2d 1273, 1282, (Ind. Ct. App. 2003). This duty of care may also arise pursuant to statute. *See, e.g.,*

*Weatherholt v. Spencer County*, 639 N.E.2d 354, 355 (Ind. Ct. App. 1994). In order to maintain an action on a theory of respondeat superior, the underlying employee's actions must be within the scope of their employment. *Stropes v. Heritage House Childrens Center of Schelbyville, Inc.*, 547 N.E.2d 244, 247 (Ind. 1989); *see also Moore v. Hosier*, 43 F. Supp. 2d 978, 989 (N.D. Ind. 1998).

Indiana Code § 36-2-13-5(a)(7) imposes upon the sheriff a duty to take care of prisoners in the jail. Defendants, likely assuming that Plaintiff intended to name Warden Whidup or Sheriff Lain as liable under the theory of respondeat superior, countered that these two individuals are immune for actions taken in the scope of their employment. *See* Ind. Code § 34-13-3-5. Defendants also rely upon *Freeman v. Porter County Sheriff's Dept.*, 2011 U.S. Dist. LEXIS 129533 (N.D. Ind. Nov. 7, 2011), for the principle that the Sheriff and the Warden are immune from personal liability because any action they took with regards to Defendant was in the course of their employment.

Plaintiff countered Defendant's motion in two ways. First, Plaintiff maintains that Indiana Code § 34-13-3-5 is inapplicable here because she did not allege that Defendants committed tortious conduct in the scope of their employment. On the basis of her pleading in this manner, Plaintiff asserts that discovery is needed to determine if the Sheriff and Warden can use this statutory grant of immunity. Second, Plaintiff tried to distinguish the present case from *Freeman*. Plaintiff urges the Court to ignore *Freeman* because that case was decided on summary judgment. More significantly, Plaintiff urges the Court to disregard *Freeman* because the Porter County Sheriff's Department and Sheriff Lain were named as Defendants in that case and only Sheriff Lain is named here.

Both of Plaintiff's arguments are unavailing. First, the Court is able to decide this issue under the 12(b)(6) standard. Next, by stating that the Porter County Sheriff's Department is not a named Defendant here confuses the state law governing municipal liability. Nevertheless, this conclusion does not settle this issue. First, Sherriff Lain and Warden Whidup are immune from liability in their personal capacity because, on the basis of their complete lack of interaction with Plaintiff, every action they took with regards to Plaintiff was in the scope of their employment. However, the governmental entity, in this instance the Porter County Sheriff's Department, may still be liable for the alleged negligence of Jail employees committed in the scope of their employment. For instance, if unnamed Jail staff did breach their duty of care to Plaintiff, the Porter County Sheriff's Department may be liable for their negligence under a respondeat superior theory of liability. Moreover, Plaintiff has argued in the alternative that she was intentionally denied necessary medical care, which would reclassify the five unnamed Defendants' actions as outside of the scope of employment because this sort of deliberate indifference could be classified as criminal or malicious.

The Court notes that federal pleading rules only call for a "short and plain statement of the claim showing that the pleader is entitled to relief and they "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 135 S. Ct. 246, 346 (2014). Accordingly, accepting Plaintiff's factual allegations as true, the Court finds that a negligent infliction of emotional distress claim survives as it pertains to the Porter County Sheriff's Department, or in the alternative, against the five unnamed Defendants in their personal capacity.

### E. Conclusion

For the reasons outlined above, Defendants' Motion to Dismiss (DE 14) is granted in part and denied in part. Defendants Motion is granted in part as it pertains to:

1) the § 1983 individual capacity claims against Sheriff Lain and Warden Whidup;

2) the § 1983 official capacity claim against Warden Whidup;

3) the naming of the Porter County Commissioners as a Defendant in this case; and

4) the state law medical malpractice and failure to train negligence claims;

Correspondingly, Plaintiff's cause of action has the remaining claims:

1) a § 1983 official capacity claim against Sheriff Lain, which is considered a claim against the Porter County Sheriff's Department;

2) a § 1983 individual capacity claim against five unnamed Porter County Jail officers;

3) a state law wrongful death claim against the Porter County Sheriff's Department;

4) a state law negligence claim against the Porter County Sheriff's Department for failure to adequately staff the Jail; and

5) a state law negligent infliction of emotional distress claim against the Porter County Sheriff's Department, or in the alternative, against the five unnamed Defendants in their personal capacity.

**SO ORDERED** on April 29, 2015.

s/ Judge Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE
